UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LISA HANIGAN,

        Plaintiff,

    v.

CITY OF KENT, et al.,

        Defendants.

CASE NO. C06-176JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on Kent Police Department Officer John Cagle's motion for summary judgment (Dkt. # 24), his motion to file an overlength brief (Dkt. # 41), and his motion to exclude evidence (Dkt. # 51). Although Plaintiff Lisa Hanigan has requested oral argument, the court finds these motions suitable for disposition based on the parties' briefing and supporting evidence. For the reasons stated below, the court GRANTS Officer Cagle's motion for summary judgment, and STRIKES the remaining motions.

ORDER – 1

## II.  BACKGROUND

On August 22, 2003, Officer Cagle came to Ms. Hanigan's home in response to her request for assistance.  When he arrived, she informed him that she had a domestic violence protective order against her ex-boyfriend, Donald Peters, and that Mr. Peters had violated the order by placing telephone calls to her home that day and three days prior.  She told Officer Cagle that Mr. Peters had placed the phone calls from the prison facility where he was incarcerated, and that he was scheduled for release in August 2004.  She gave Officer Cagle copies of a temporary and permanent protective order against Mr. Peters.[1]  She also provided Officer Cagle with a copy of an August 13, 2003 letter from Mr. Peters to the King County Superior Court in which he stated that he was aware of an earlier protective order from 2002, and that Ms. Hanigan had told him "around August 1-4, 2003" that "a new no contact order is or will be in place . . . ."  Hanigan Decl., Ex. F.

Officer Cagle accessed a computer system to check the status of Ms. Hanigan's protective orders.  The computer system showed no record of the permanent protective order.  It indicated that a court had issued a temporary protective order, but that no one had served it on Mr. Peters.  Nonetheless, relying on Ms. Hanigan's assurances that Mr. Peters had been served, Officer Cagle began filling out paperwork to charge Mr. Peters with two counts of violating a protective order.

On the day Officer Cagle met Ms. Hanigan, Mr. Peters did not know her address.  To help protect herself and her three minor children from Mr. Peters, Ms. Hanigan had moved to a new residence after Mr. Peters' incarceration began.  Ms. Hanigan states that

---

[1]The King County Superior Court entered a temporary protective order on July 25, 2003, reissued the temporary protective order on August 3, 2003, and entered a permanent protective order on August 22, 2003, the day of Officer Cagle's visit to Ms. Hanigan's home.  Hanigan Decl., Exs. B-D.  It is not clear which versions Ms. Hanigan gave Officer Cagle, but each order is identical in all ways relevant to the court's review of the instant motion.

ORDER – 2

she told Officer Cagle that she wanted her address kept confidential; Officer Cagle denies this. Hanigan Decl. ¶ 17; Cagle Decl. ¶ 5. In the letter that Ms. Hanigan gave Officer Cagle, Mr. Peters states that Ms. Hanigan "moved in June 2003," and that she would "not give me a [sic] address, so I might write to my kids." Hanigan Decl., Ex. F. Also, each version of Ms. Hanigan's protective order states in the same location of its second page that "Petitioner's address is confidential." Id., Exs. B-D.

Within two hours of meeting Ms. Hanigan, Officer Cagle finished the paperwork necessary to charge Mr. Peters. Cagle Dep. at 97. He completed a "Master Case Report Form," a "Master Case Narrative," and a citation form. Estes Decl., Ex. A at KPD 0001-4, 0014-15. Officer Cagle included Ms. Hanigan's address on each of the three forms. On the citation form, he did not state Ms. Hanigan's name, but provided her address as the location of the protective order violation. Id. at KPD 0014. The citation form consists of the form and three carbonless copies affixed beneath the form. One of the copies is a "goldenrod" form designated "DEFENDANT COPY." See id. The Master Case Report Form includes a page with seventeen categories of data. Id. at KPD 0002. The seventeenth category is "DISCLOSURE." Id. In that category, Officer Cagle checked a box marked "NOT DISCUSSED," and declined to check a box marked "DO NOT DISCLOSE."[2] Id.

Officer Cagle compiled his paperwork, consisting of the Master Case Report Form, the Master Case Narrative, the citation form, all three versions of the protective orders against Mr. Peters, and Mr. Peters' letter. He gave the paperwork to his

---

[2]The court notes that there is little evidence regarding the purpose of the "DISCLOSURE" category on the Master Case Report Form, or the circumstances in which an officer should check the various boxes therein. The court assumes, construing the evidence in the light most favorable to Ms. Hanigan, that the box would have served as additional notice of Ms. Hanigan's desire to keep her address confidential.

ORDER – 3

supervisors for approval. Once his supervisors approved his paperwork, they sent it to the municipal prosecutor's office in Kent. There is no evidence that Officer Cagle had any involvement with Ms. Hanigan or the charges against Mr. Peters after he gave his paperwork to his supervisors.

The prosecutor reviewing Officer Cagle's paperwork decided to pursue charges against Mr. Peters. In September 2003, she filed a complaint against Mr. Peters, as well as preliminary motions. Hayden Decl. ¶¶ 4-5. In one motion, she requested that the court "not disclose the personal information of the above-stated victim, as such information may be confidential and disclosure may cause risk to her health and safety." Id. ¶ 7. For reasons not apparent from the record, the court declined to grant the motion.[3] The court ultimately entered a warrant for Mr. Peters' arrest. Id. ¶ 6.

Upon his release from prison on August 4, 2004, Mr. Peters was transferred to Municipal Court in Kent for arraignment for violating the protective order. Although no one has specific recollection of the arraignment, no one disputes that Mr. Peters received a complaint that the prosecutor prepared as well as the "goldenrod" copy of Officer Cagle's citation. On August 19, 2004, another prosecutor dismissed the charges against Mr. Peters based on her view that she could not prove that Mr. Peters had received proper service of the protective orders before he violated them. Perdue Decl. ¶¶ 3-4.

On December 31, 2004, Mr. Peters came to the home of a friend of Ms. Hanigan's. Leontitsis Decl. ¶ 6. He waved the goldenrod copy of Officer Cagle's citation at her, read the address disclosed as the location of the violation, and demanded to know if it was Ms. Hanigan's address. Id. ¶¶ 10-14.

---

[3]There is no evidence that the court specifically denied the motion. It appears that the court simply did not address it. There is no evidence that anyone attempted to convince the court to rectify this apparent oversight.

ORDER – 4

Ms. Hanigan's friend told her about Mr. Peters' contact with her. Since that time, Ms. Hanigan has experienced severe anxiety and fear that Mr. Peters will find her and her children and hurt them. Fortunately, other than a fleeting inadvertent contact on a local freeway and a suspected telephone call to her home, Mr. Peters has not approached Ms. Hanigan. Ms. Hanigan recently moved to a new address.

Ms. Hanigan sued Officer Cagle and the City of Kent for disclosing her address to Mr. Peters. The instant motion concerns her claims against Officer Cagle.

### III.  ANALYSIS

In resolving this motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party meets its burden, the opposing party must show that there is a genuine issue of fact for trial. Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The opposing party must present significant and probative evidence to support its claim or defense. Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). For purely legal questions, summary judgment is appropriate without deference to the non-moving party.

**A.  Constitutional Claims**

Ms. Hanigan seeks a remedy under 42 U.S.C. § 1983 for violations of her constitutional right to bodily security and her constitutional right to privacy. Officer Cagle argues that he did not violate Ms. Hanigan's constitutional rights, and that he is entitled to qualified immunity.

ORDER – 5

Section 1983 creates a remedy for an individual who suffers a violation of her rights under the Constitution or other laws at the hands of a person acting under the color of state law. Qualified immunity provides a defense in a § 1983 action where a reasonable person in the defendant's shoes could have mistakenly believed that the law did not prohibit his conduct. Saucier v. Katz, 533 U.S. 194, 205 (2001).

Since the Supreme Court decided Saucier, the Ninth Circuit has developed a two-step inquiry for addressing qualified immunity. A court must first determine if the evidence taken in the light most favorable to the plaintiff shows that a constitutional violation occurred. Kennedy v. City of Ridgefield, 439 F.3d 1055, 1060 (9th Cir. 2006). If a violation occurred, then the court must turn to the second step, which focuses on whether the law underlying the constitutional violation was "clearly established." Id. In this step, the court decides if either the law was unclear or if the officer made a reasonable mistake about what the law requires. Id. at 1160-61. The court must subject each of Ms. Hanigan's two claimed constitutional violations to this analysis.

**1.    Right to Bodily Security – State-Created Danger**

Recognizing that the Fourteenth Amendment "protects a citizen's liberty interest in her own bodily security," courts have held that a state actor denies that protection when he "creates or exposes an individual to a danger which he or she would not otherwise have faced." Kennedy, 439 F.3d at 1061. The Supreme Court has never acknowledged this rule, sometimes called the "state-created danger" doctrine. Rios v. City of Del Rio, 444 F.3d 417, 422 (5th Cir. 2006); see also Kennedy, 439 F.3d at 1074 (Bybee, J., dissenting). At least eight circuits, including the Ninth Circuit, have adopted it. Kennedy, 439 F.3d at 1061 n.1 (citing cases). In the Ninth Circuit, a state-created danger claim requires proof that a state actor affirmatively placed an individual in danger, and did so by acting with "deliberate indifference" to the danger. Id. at 1062.

ORDER – 6

Construing the evidence in the light most favorable to Ms. Hanigan, Officer Cagle affirmatively placed Ms. Hanigan in danger. As Officer Cagle notes, he is not responsible for Mr. Peters' violent proclivities. Officer Cagle was aware of those proclivities, however, because he was aware of the protective orders that were intended to shield Ms. Hanigan from further violence. When Mr. Peters obtained a copy of the citation that Officer Cagle wrote, Ms. Hanigan faced a new danger: that Mr. Peters would come to her home.

Although Officer Cagle insists that he is not responsible for the disclosure of Ms. Hanigan's address, a jury could find otherwise. The evidence linking Officer Cagle to the ultimate disclosure to Mr. Peters is a long and tenuous chain of causation. The act that created the danger was providing Mr. Peters with a copy of the citation that included Ms. Hanigan's address.[4] An unknown agent of the Kent Municipal Court provided that copy to Mr. Peters. He or she was able to provide the citation only after a judge declined to enter an order protecting Ms. Hanigan's personal information, which occurred only after members of the prosecutor's office filed the citation in court without redacting Ms. Hanigan's address, which occurred only after the prosecutor's office failed to acknowledge three protective orders that required keeping Ms. Hanigan's address confidential, which occurred only after supervisory officers of the Kent Police Department failed to highlight any confidentiality concerns, which occurred only after Officer Cagle passed his paperwork to his supervisors. At any point in this chain, someone other than Officer Cagle could have acted differently and Mr. Peters would never have learned Ms. Hanigan's address. The prosecutors could have done more than

---

[4] Ms. Hanigan occasionally suggests that Officer Cagle harmed her by disclosing her address in other documents in his paperwork, because prosecutors filed those documents in court. There is no evidence, however, that Mr. Peters learned Ms. Hanigan's address from any source other than the citation form.

ORDER – 7

file a one-sentence, *pro forma* motion to protect Ms. Hanigan's confidential information. The court could have granted the motion. When the court declined to grant it, the prosecutor could have asked for reconsideration, perhaps pointing out the confidentiality provision of the protective order. In the process of pursuing a charge of violating a protective order, it appears that dozens of persons overlooked or ignored the order itself, which required that Ms. Hanigan's address remain a secret. The evidence raises serious questions about whether the harm to Ms. Hanigan was a foreseeable result of Officer Cagle's actions, whether Officer Cagle was the proximate cause of that harm, and whether the acts and omissions of others are supervening causes that insulate Officer Cagle from liability. Nonetheless, the court finds that there is enough evidence, just barely, to carry these questions to a jury.

It is not sufficient, however, that Officer Cagle created a danger to Ms. Hanigan; he must also have been deliberately indifferent to it. This is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his actions." Kennedy, 439 F.3d at 1064 (quoting Bryan County v. Brown, 520 U.S. 397, 410 (1997)). The question before the court, then, is whether a jury could conclude that Officer Cagle knew that sending his paperwork to his supervisors would ultimately result in the disclosure of Ms. Hanigan's address, or whether this consequence was obvious.

There is no evidence that Officer Cagle knew that filing his paperwork would result in the disclosure of Ms. Hanigan's address. At his deposition, Officer Cagle made clear that he has very little knowledge of the general process of serving citations, much less how the process changes when a confidentiality order is in place. Although he "assume[d]" that once his supervisors approved paperwork, they placed it (including citations) into a "satchel" for delivery to either the clerk of court or the prosecutor, he was not sure who actually received the paperwork. Cagle Dep. at 85. He had no

ORDER – 8

knowledge of any process that the Kent Police Department took to serve or deliver citations. Id. He assumed, but did not know, that prosecutors were responsible for serving citations, or at least for deciding that someone should serve them. Id. at 86. When asked about what happens to a citation after he fills it out, he explained his lack of knowledge succinctly: "Once I fill out the citation and turn it in, I have zero expectation. Whatever happens after that point is no longer any of my control and I don't worry about those things." Id. at 172. Indeed, the record reflects that Officer Cagle is not even certain that defendants receive copies of citations. Id. at 174 ("I think that's what happens," but "I don't know what they do with the citation," and "I don't know if it's a certified letter of if they send the . . . goldenrod . . . to the defendant or not").

When Ms. Hanigan deposed Sergeant Patrick Lowery, the person designated as most knowledgeable about the relevant procedures at the Kent Police Department, he confirmed that officers have little knowledge about how prosecutors use citations. Lowery Dep. at 38-40. He testified that officers are not told that the documents they file are available to the public. Lowery Dep. at 27. Officers are trained to write the address at which a crime occurred so that others can assess which court will have jurisdiction in the case. Lowery Dep. at 20-21; see also Cagle Dep. at 80 (stating that he was trained to write the address at which a crime occurred on the citation); Hayden Decl. ¶ 9.

More important than Officer Cagle's lack of knowledge about what generally happens to citations is that the evidence reveals that he knew nothing about what happens in a case where a protective order mandates the confidentiality of a victim's address. He never received training on confidentiality provisions in protective orders. Id. at 87-88, 115-16. There is no evidence that he was trained to redact citations under any circumstances. Officer Cagle testified that he is aware that disclosing a domestic violence victim's address could be risky, id. at 115-16, but there is no evidence that he

ORDER – 9

knew or believed that his actions with respect to Ms. Hanigan would result in the disclosure of her address. Sergeant Lowery confirmed that Kent police officers receive no training about special measures to take in incidents involving a protective order that prohibits disclosure of the victim's address. Lowery Dep. at 27-28.

The court acknowledges that a jury could find that Officer Cagle could have, and perhaps should have, done more to prevent the disclosure of Ms. Hanigan's address. He could have checked the "DO NOT DISCLOSE" box on the second page of the Master Case Report Form. He could have redacted Ms. Hanigan's address from all of his paperwork, including the citation. He could have prominently affixed a warning to his supervisors and prosecutors reviewing his paperwork that they should not disclose Ms. Hanigan's address. He could have taken more care to ascertain what would happen to his paperwork after he gave it to his supervisors.

These concerns, however, sound in negligence. They would require the jury to decide what a reasonable officer would have done. In resolving Ms. Hanigan's constitutional claims, negligence is patently insufficient. L.W. v. Grubbs, 879 F.2d 583, 587 (9th Cir. 1989) (9th Cir. 1989). Deliberate indifference, as defined in Kennedy, is the standard of culpability applicable to Officer Cagle.

The court finds that no reasonable jury could conclude that the disclosure of Ms. Hanigan's address was a known or obvious consequence of Officer Cagle's actions, and thus no reasonable jury could find that he was deliberately indifferent to the danger inherent in that disclosure. There is no evidence that it was known or obvious to Officer Cagle that his supervisors, the prosecutor, and the Municipal Court would fail to heed the protective orders' trice-repeated admonition not to disclose Ms. Hanigan's address. For this reason, Ms. Hanigan cannot prove that a constitutional violation occurred under the state-created danger doctrine, and the court's qualified immunity inquiry terminates.

ORDER – 10

### 2. Right to Privacy

Ms. Hanigan alleges that in addition to her right under the Fourteenth Amendment to be free from state-created dangers, Officer Cagle violated her constitutional right to privacy. Courts have acknowledged that the Constitution's protection of privacy extends to protect against disclosure of private information. In Whalen v. Roe, 429 U.S. 589, 593-94 (1977), the Supreme Court considered the constitutionality of a New York statute requiring that physicians provide the state with identifying information about patients receiving certain drugs. The Court acknowledged that the statute might "invade a constitutionally protected 'zone of privacy,'" id. at 599, but concluded that it did not "pose a sufficiently grievous threat . . . to establish a constitutional violation." Id. at 600. In cases that consider a statute or other program that potentially impinges on this right to "informational privacy," courts balance the affected person's privacy interests against the government's interest in disclosing the information. E.g., In re Crawford (Ferm v. United States Trustee), 194 F.3d 954, 959 (9th Cir. 1999) (considering constitutionality of Bankruptcy Code section requiring disclosure of social security numbers).

Ms. Hanigan's informational privacy claim against Officer Cagle is a rare breed, one that has received relatively little attention in the courts. It does not challenge a statute or broadly applicable program;[5] it challenges Officer Cagle's actions to the extent they impinge on her informational privacy rights.[6] The court assumes that a policy that

---

[5] Because this motion concerns only the claims against Officer Cagle, the court has no occasion to consider whether Ms. Hanigan is seeking a broader informational privacy claim against the City of Kent. She might argue, for example, that the City's inadequate measures for protecting the confidentiality of domestic violence victim's addresses constitute a violation of her informational privacy rights.

[6] There are two different ways that the court could characterize Officer Cagle's alleged violation of Ms. Hanigan's privacy: (1) that Officer Cagle's act of disclosing Ms. Hanigan's address to his supervisors and Kent prosecutors, by itself, violated her privacy rights; or (2) that Officer Cagle's act of disclosing Ms. Hanigan's address violated her privacy rights because it

ORDER – 11

required police to disclose the address of a domestic violence victim to her abuser over her objection would, at a minimum, raise serious privacy concerns. It is difficult to conceive of a government interest that would justify such a disclosure, and Officer Cagle advances none. Indeed, Officer Cagle acknowledges that it is not a good idea to disclose such information to an abuser. Cagle Dep. at 115-16. The court therefore assumes, for purposes of resolving this motion, that Officer Cagle infringed upon Ms. Hanigan's right to privacy. This assumption, however, does not end the court's inquiry.

Ms. Hanigan's privacy claim against Officer Cagle raises a question that the parties ignore: what standard of culpability applies to an single state actor who violates a citizen's right to informational privacy? When the privacy-violating disclosure creates a danger to the citizen, the state-created danger doctrine bars liability where the state actor was not at least deliberately indifferent. In this case, the lack of evidence of deliberate indifference prevents holding Officer Cagle liable for the danger he created. Does it also prevent holding him liable for violating Ms. Hanigan's right to privacy?

The court concludes that Ms. Hanigan's constitutional privacy claim against Officer Cagle is subject to the same standard of culpability as her state-created danger claim. The court reaches this conclusion after tracing Ms. Hanigan's privacy claim to its source in the Constitution. Ms. Hanigan does not claim that disclosing her address, in general, is a violation of her right to privacy. Ms. Hanigan, like most people, likely discloses her address every day. See Crawford, 194 F.3d at 960 (noting that a social security number is not "inherently sensitive or intimate information, and its disclosure does not lead directly to injury, embarrassment, or stigma"). If Officer Cagle had arrived

---

ultimately resulted in disclosure to Mr. Peters. The court finds that Ms. Hanigan has raised only the latter challenge. The two pages of briefing that Ms. Hanigan devotes to her privacy claim do not suggest that the Constitution prevents Officer Cagle from disclosing her address within the criminal justice system.

ORDER – 12

at her home to investigate a burglary, she likely would not object to his disclosure of her address to his superiors and prosecutors. In this case, Ms. Hanigan's interest was in protecting the disclosure of her address to one person: Mr. Peters. That interest arose out of the fear for her and her family's safety that would be result from disclosing her address to him. As Ms. Hanigan puts it, this interest is "a fundamental liberty interest" in her and her family's life, personal security, and bodily integrity. Hanigan Opp'n at 10-11 (quoting Kallstrom v. City of Columbus, 136 F.3d 1055, 1062 (6th Cir. 1998)). More importantly, it is an interest in life and liberty that finds its source in the Fourteenth Amendment, the source of her claim under the state-created danger doctrine. See Kennedy, 439 F.3d at 1062 (identifying constitutional source of state-created danger doctrine). For that reason, the court concludes that deliberate indifference, the Fourteenth Amendment standard of culpability applicable to Ms. Hanigan's state-created danger claim, also applies to her claim that Officer Cagle violated her right to privacy. Her right-to-privacy claim fails for the same reasons as her state-created danger claim.

In Kallstrom, the only authority Ms. Hanigan relies on in which a court considered a privacy claim under comparable circumstances,[7] the court also concluded that the privacy claim was subject to state-created danger standards. In that case, three

---

[7] In Nicholas v. Wallenstein, 266 F.3d 1083, 1085 (9th Cir. 2001), the court considered a claim against a municipal employee who disclosed the identity of employees involved in an inmate's death to the angry family members of the inmate. The district court had dismissed the employees' constitutional invasion of privacy claims, then "treated the case as if plaintiffs had amended the complaint [to allege] a violation of their liberty by a state-created danger." Id. at 1087. The court of appeals affirmed the dismissal of the state-created danger claim because the employees had not shown deliberate indifference, and affirmed the dismissal of the privacy claim without discussing the requisite level of culpability. Id. at 1089. In Kennedy, a police officer investigating accusations of child molestation revealed to the suspect the identity of his accusers. 439 F.3d at 1058. The accusers, fearing for their safety if the suspect knew they had accused him, had obtained the officer's assurance that he would warn them before informing the suspect. Id. Although the accusers could presumably have pursued an invasion of privacy claim like Ms. Hanigan's, there is no indication that they did.

ORDER – 13

undercover police officers sought remedies for the defendant city's disclosure, under a state public records act, of their personnel files to defense attorneys for members of a violent street gang. Kallstrom, 136 F.3d at 1059. The officers brought § 1983 claims, asserting violations of their "right to privacy." Id. at 1060. The court, after examining other possible constitutional sources for their privacy claim, id. at 1060-61, concluded that the relevant interest was the officers' "fundamental liberty interest . . . in preserving their lives and the lives of their family members, as well as preserving their personal security and bodily integrity," and that the Fourteenth Amendment's Due Process Clause protected that interest. Id. at 1062. After rejecting the city's argument that the interest in public disclosure of the information outweighed the officers' interests, id. at 1065, the court analyzed the officers' claims under the "state-created-danger theory." Id. at 1066. The court found liability under § 1983, finding that the city "either knew or clearly should have known that releasing the officers' addresses, phone numbers, . . . [etc.] substantially increased the officers' and their families' vulnerability to private acts of vengeance." Id. at 1067. In later cases, the Sixth Circuit "clarified" that despite the Kallstrom court's use of the phrase "knew or clearly should have known," the standard of culpability is at least deliberate indifference. McQueen v. Beecher Cmty. Schs., 433 F.3d 460, 469 (6th Cir. 2006) (citing Ewolski v. City of Brunswick, 287 F.3d 492, 510 (6th Cir. 2002)).[8]

---

[8]The Sixth Circuit, like most circuits, has amended the culpability standard in state-created danger cases by requiring conduct that is "'so egregious' that it can be said to be 'arbitrary in the constitutional sense.'" Ewolski, 287 F.3d at 510 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)); see also Waddell v. Hemerson, 329 F.3d 1300, 1305 (11th Cir. 2003); Hart v. City of Little Rock, 432 F.3d 801, 805 (8th Cir. 2005); Sanford v. Stiles, 456 F.3d 298, 304-305 (3d Cir. 2006). The Court in Lewis held that conduct must "shock the contemporary conscience" to meet this standard, 523 U.S. at 847, and noted that deliberate indifference might not shock the conscience in all contexts, 523 U.S. at 850. Prior to the Court's ruling in Lewis, the Ninth Circuit declined to require that deliberate indifference in a state-created danger case also shock the conscience. L.W. v. Grubbs, 92 F.3d

ORDER – 14

Kallstrom does not bind the court, but it illustrates that in a case where a state actor defendant creates a danger by disclosing information, a constitutional privacy claim imposes the same standard of culpability on the defendant as a state-created danger claim. In this case, Ms. Hanigan has failed to provide evidence that Officer Cagle acted with the requisite culpability, a failure that dooms both of her constitutional claims.

**B.    State Law Claims**

Officer Cagle claims that he is immune from civil liability under Washington law by virtue of RCW § 10.99.070, which provides as follows:

> A peace officer shall not be held liable in any civil action for an arrest based on probable cause, enforcement in good faith of a court order, or any other action or omission in good faith under this chapter arising from an alleged incident of domestic violence brought by any party to the incident.

The statute is part of a chapter that governs the "official response" to domestic violence. See RCW § 10.99.010. Among other things, the chapter makes it mandatory that peace officers arrest persons when they have probable cause to believe they committed an act of domestic violence. Donaldson v. City of Seattle, 831 P.2d 1098, 1103 (Wash. Ct. App. 1992); RCW § 10.99.030(6)(a). Peace officers must also arrest a person for violating a protective order if they have probable cause to do so. RCW § 10.99.055.

By its text, the immunity of RCW § 10.99.070 applies to Ms. Hanigan's state law claims. Her suit against Officer Cagle arises from an incident of "domestic violence." RCW § 10.99.020(5)(r) (defining "domestic violence" to include "[v]iolation of the provisions of a restraining order, no-contact order, or protection order"). There is also no dispute that Officer Cagle was acting to enforce a court order.

The Washington Supreme Court's interpretation of RCW § 10.99.070 in Roy v. City of Everett, 823 P.2d 1084 (Wash. 1992) is not at odds with this court's interpretation

---

894, 900 (9th Cir. 1996). Since the Court decided Lewis, the Ninth Circuit has maintained this position. See Kennedy, 439 F.3d at 1065 (following Grubbs without citing Lewis).

ORDER – 15

of the statute. In <u>Roy</u>, the court considered a woman's claim following a police department's "yearlong pattern . . . of non-enforcement of the law" in the face of a "reign of terror" in which a man "relentlessly and violently pursued and abused her." <u>Id.</u> at 1085. The court noted that construing the statute to provide immunity for police officers who did nothing would eviscerate the chapter, which aimed to ensure police enforcement of domestic violence laws. <u>Id.</u> at 1087 (noting that the officer's interpretation of the statute was "absurd in every sense of the term").

The instant case is distinguishable from <u>Roy</u>. It arises from Officer Cagle's action in compliance with RCW § 10.99.055, requiring that he arrest Mr. Peters for violating a protective order. In this case, Mr. Peters' incarceration prevented an immediate arrest, but Officer Cagle took steps to ensure that he would be arrested upon his release from prison. In the course of carrying out his statutory duty to enforce Ms. Hanigan's protective order, Officer Cagle arguably made several omissions. He did not check the "DO NOT DISCLOSE" box on the Master Case Report Form. He did not redact Ms. Peters' address from his paperwork. He did not take affirmative steps to call his supervisors' or prosecutors' attention to the confidentiality of Ms. Hanigan's address. Such omissions, however, when made in the course of carrying out a statutory duty to a domestic violence victim, are clearly within the ambit of RCW § 10.99.070.

Having established that the immunity of RCW § 10.99.070 potentially applies to Officer Cagle, it remains to decide whether his omissions were "in good faith." The statute does not provide a definition of "good faith," but "statutory immunity involving good faith is not unique." <u>Deschamps v. Mason County Sheriff's Office</u>, 96 P.3d 413, 417 (Wash. Ct. App. 2004). The "standard definition of good faith is a state of mind indicating honesty and lawfulness of purpose." <u>Whaley v. State</u>, 956 P.2d 1100, 1106 (Wash. Ct. App. 1998). In <u>Whaley</u>, the court interpreted RCW § 26.44.060(1)(a), a

ORDER – 16

statute that provides civil immunity to persons who report allegations of child abuse "in good faith." Id. at 1105. The court rejected the "traditional negligence standard" as the standard for judging good faith. Id. at 1106 (concluding that "what the reporter reasonably should have known" does not "determine whether immunity will attach").

In this case, there is no evidence that Officer Cagle acted dishonestly or with an unlawful purpose. The evidence uniformly shows that his purpose was to comply with the law requiring him to pursue charges against Mr. Peters. See id. (noting that statutory duty to report abuse and potential penalties for violating the duty is "a compelling consideration on the side of concluding [the reporter's] purpose was lawful"). On this record, no reasonable juror could conclude that Officer Cagle lacked good faith. The court therefore finds that Officer Cagle is immune under RCW § 10.99.070 from Ms. Hanigan's Washington law claims.

**C.     Miscellaneous Motions – Conduct of Counsel**

On November 10, 2006, the day Officer Cagle's reply brief was due, his counsel filed a motion for leave to file an overlength reply brief. In doing so, counsel ignored Local Rules W.D. Wash. CR 7(f), which require him to file such a motion at least three judicial days before the underlying brief is due. The court did not grant counsel leave to file an overlength brief; counsel filed one anyway. Court rules permit a 12-page reply brief; counsel's brief was just over 21 pages long. The court has disregarded the all but the first 12 pages of the reply brief. The court further orders that counsel shall not charge his client for filing a brief in derogation of the local rules.

Counsel continued his disregard of the local rules by filing a separate motion to exclude evidence that Ms. Hanigan relied on in her opposition brief. See Local Rules W.D. Wash. CR 7(g) ("Requests to strike material contained in . . . submissions of opposing parties shall not be presented in a separate motion to strike, but shall instead be

ORDER – 17

included in the responsive brief"). The court strikes this motion, and again orders that counsel shall not charge his client for filing a brief in derogation of the local rules.

Counsel's motion to exclude evidence targeted Ms. Hanigan's counsel's disappointing conduct in choosing to rely Officer Cagle's personnel file in a misguided (to put it charitably) attempt to provide evidence of his culpability. Even if the court were at liberty to ignore Federal Rule of Evidence 404(b), which prevents the introduction of evidence of past acts to show "action in conformity therewith," it could not ignore that the incidents counsel describe have absolutely nothing to do with any issue before the court. Counsel's task was to provide evidence that Officer Cagle was deliberately indifferent to Ms. Hanigan's safety. Although the court declines to perpetuate counsel's poor judgment by repeating disciplinary information from Officer Cagle's file, the court finds that nothing in his disciplinary record bears remotely on this issue. Particularly absurd is counsel's assertion that "Officer Cagle's work history reveals a pattern of indifference to the rights of crime victims, especially battered women." Hanigan Opp'n at 17. His personnel file, even the excerpts that counsel selected, shows nothing of the sort. Indeed, Officer Cagle's superiors commended him for his sensitivity in dealing with family members in a domestic violence situation. Counsel's decision to sling mud at Officer Cagle falls beneath the minimum standards of advocacy that this court accepts from counsel. Counsel failed to help his client, and damaged his own reputation in the process.

Having called into question Ms. Hanigan's counsel's conduct, the court cannot turn a blind eye to similar conduct by Officer Cagle's counsel. He chose to blame Ms. Hanigan for the danger Mr. Peters posed, suggesting that if Ms. Hanigan really believed that Mr. Peters posed a threat, she would have moved (a second time) to a new home after he discovered her address, or that she should have "move[d] to a domestic violence

ORDER – 18

shelter." Hanigan Opp'n at 13.  Counsel is free, of course, to doubt the sincerity of Ms. Hanigan's fear of Mr. Peters.  On the record before the court, however, there is absolutely no reason to question her sincerity, and even if there were, there was no need to question her sincerity in this motion.

It is not the court's practice to devote sections of its orders to counsel's conduct. The court orders both parties' counsel to give the court no reason to do so in the future.

## IV.  CONCLUSION

For the foregoing reasons, the court GRANTS Officer Cagle's motion for summary judgment (Dkt. # 28), STRIKES his motion for leave to file excess pages (Dkt. # 41), and STRIKES his motion to exclude inflammatory evidence (Dkt. # 51).  Officer Cagle is not entitled to attorneys' fees.

Dated this 8th day of December, 2006.

*[signature]*

JAMES L. ROBART
United States District Judge

ORDER – 19